UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LYLE A. HARTLEY,

          Plaintiff,

vs.                                                      Case No.  3:09-cv-541-J-25MCR

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the case is remanded for further proceedings.

**I.    PROCEDURAL HISTORY**

Plaintiff filed applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on August 3, 2003.  (Tr. 46-48, 459-63).  The Social Security Administration denied Plaintiff's application initially and on reconsideration, after a hearing before an ALJ.  (Tr. 13-21, 24-30, 34-36, 464-73, 477-548).  The Appeals Council ("AC") initially denied Plaintiff's request for review of the ALJ's hearing decision (Tr. 5-8) but, on April 23, 2008, pursuant to a March 24, 2008 court order, remanded the case back to the ALJ, with instructions to articulate the

---

[1]The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 11).

weight afforded to Plaintiff's treating physicians and reasons for discrediting their opinions, to re-evaluate Plaintiff's residual functional capacity ("RFC"), and obtain vocational expert ("VE") testimony, if necessary. (Tr. 575, 599-601). Medical experts ("MEs") Drs. Edward Griffin and Bruce Witkind testified at a supplemental hearing held in accordance with the remand order on January 7, 2009.[2] (Tr. 638-720). After review of the entire record, and in accordance with the AC's remand order, the ALJ found Plaintiff was not disabled on April 7, 2009. (Tr. 552-74). The AC denied Plaintiff's request for review on July 20, 2009 and Plaintiff timely filed his Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since July 23, 2003, due to a back injury, constant pain, hepatitis C in remission, high blood pressure, and depression. (Tr. 63, 81, 552).

### B.    Summary of Evidence Before the ALJ

Plaintiff was 48 years old at the time of the ALJ's decision. (Tr. 46, 459, 552-74). Plaintiff received his General Equivalency Diploma ("GED") and has past relevant work experience as a carpenter, form builder, and maintenance work repairer. (Tr. 646, 710-11). Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.

---

[2] Plaintiff filed subsequent applications for DIB and SSI on April 18, 2006, which were consolidated with the remand case. (Tr. 552, 797-802, 803-05).

Plaintiff first sought treatment from Allain Girouard, M.D. for complaints of back pain on September 12, 2003. (Tr. 211). Dr. Girouard noted Plaintiff was suffering from a small disc protrusion and conservative treatment was prescribed. (Tr. 211). On November 5, 2003, Dr. Girouard opined Plaintiff was unable to work for an indeterminate period of time as a result of his back impairment. (Tr. 208). On March 9, 2004, Dr. Girouard performed the following surgical procedures on Plaintiff's back: L4-5 decompression foraminotomy; L5-S1 decompression foraminotomy; L4-S1 posterolateral fusion; L5-S1 posterolateral fusion; L4-S1 instrumentation with a Stryker pedicle screw system and Autograft. (Tr. 179-81).

A CT scan of the lumbar spine was performed on April 30, 2004 and revealed a moderate broad based left posterolateral disc bulge at L4-5 with moderate left lateral recess narrowing and posterocentral and posterolateral disc bulges from L2-3 to L5-S1. (Tr. 330). On May 5, 2004, Plaintiff reported improvement in his back pain but no change in his leg pain, along with swelling and paresthesias in his foot. (Tr. 199). On June 2, 2004, Dr. Girouard reported Plaintiff's pain had decreased and showed "promising improvement," although still unable to work. (Tr. 196-98).

On September 21, 2004, Dr. Girouard completed a Physical Residual Functional Capacity Questionnaire, noting Plaintiff required narcotic pain medication and suffered from decreased range of motion along with increased tension in the paraspinal muscles. (Tr. 220-24). He opined that in an 8 hour day, Plaintiff could sit for less than 2 hours, stand/walk for less than 2 hours, needed daily breaks, and could occasionally lift 10 pounds. (Tr. 222).

On October 26, 2006, Dr. Girouard completed a second Physical Residual Functional Capacity Questionnaire and noted Plaintiff experienced chronic neck and back pain with radiation into his legs. (Tr. 960). He stated that in an 8 hour day, Plaintiff could sit for less than 2 hours, stand/walk for less than 2 hours, and lift 10 pounds occasionally. (Tr. 963). On March 21, 2007, he noted that surgery had failed to return Plaintiff to pain free and "his condition was prohibiting him to find any gainful employment." (Tr. 997). On January 9, 2008, Dr. Girouard reported that Plaintiff had been having some increased pain and discomfort in his back but continued to exhibit good motor function. (Tr. 1152).

Plaintiff began pain management treatment with Elena Stanescu, M.D. on October 1, 2003. (Tr. 318-19). Dr. Stanescu's examination revealed antalgic gait, normal motor and sensory findings, and negative straight leg raises. (Tr. 319). Her diagnosis included chronic severe low back pain, lumbar discopathy, and lumbar radiculopathy. She started him on Neurontin and Lortab. (Tr. 319).

Epidural steroid injections, along with bilateral lumbar paravertebral nerve blocks were performed on October 23, 2003. (Tr. 346). On January 27, 2004, Dr. Stanescu noted that she agreed surgery should be performed. (Tr. 307). Post surgery, Plaintiff reported ongoing complaints of back pain radiating into his left leg, and straight leg raises were positive at that time. (Tr. 307). On May 3, 2004, Plaintiff refused epidural injections. (Tr. 300). Examination revealed antalgic gait, decreased range of motion of the lumbar spine, decreased sensory findings, and negative straight leg raising. (Tr. 300). At that time Dr. Stanescu began prescribing methadone. (Tr. 301).

On July 2, 2004, August 3, 2004, January 20, 2005, and February 11, 2005, Plaintiff continued to complain of chronic low back pain and problems with ambulation. (Tr. 294-98).  Dr. Stanescu examined Plaintiff on March 4, 2004 and documented persistent pain despite surgery, which was "exacerbated by activity and relieved by nothing."  (Tr. 1084).  Treatment for severe and chronic low back pain, degenerative joint disease, degenerative disc disease, and failed back syndrome was provided on July 26, 2005, September 28, 2005, December 22, 2005, April 18, 2006, July 13, 2006, and October 26, 2006.  (Tr. 1060-76).

On October 31, 2006, Dr. Stanescu completed a Physical Residual Functional Capacity Questionnaire in which she noted Plaintiff experienced back and leg pain confirmed by lumbar disc bulges and foraminal narrowing.  (Tr. 992).  She opined that in an 8 hour day, Plaintiff could sit for less than 2 hours, stand/walk for less than 2 hours, and lift 10 pounds rarely.  (Tr. 994).  She also indicated that he would miss at least 4 days of work per month.  (Tr. 995).

Dr. Stanescu continued treatment on January 19, 2007, April 13, 2007, August 16, 2007, and November 29, 2007.  (Tr. 1047-56).  On February 21, 2008, Plaintiff reported that he was unable to find any work "that would fit for him" and on May 23, 2008, he reported increased left leg pain.  (Tr. 1130-33).  On August 15, 2008, Dr. Stanescu noted decreased motor strength in Plaintiff's left knee and positive straight leg raising.  (Tr. 1164).

Lynn Harper-Nimock, M.D. performed a physical consultative examination on July 24, 2006.  (Tr. 864).  Plaintiff reported constant back pain and lower extremity pain.

(Tr. 864). Dr. Harper-Nimock's examination revealed Plaintiff to be in mild distress with an abnormal gait, limping on the left, and an inability to squat. (Tr. 866). His cervical and lumbar spines evidenced decreased range of motion and straight leg raising was positive bilaterally. (Tr. 966). No sensory or motor deficits were noted. (Tr. 867). Dr. Harper-Nimock opined Plaintiff suffered from "moderate to marked limitations for prolonged standing, walking, climbing, heavy lifting, and sitting." (Tr. 868).

### C.      **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv). Fifth, if a claimant's impairments (considering his residual functional

capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 554-55). At step two, the ALJ found Plaintiff had the following severe impairments: a history of chronic hepatitis, status post surgical lumbar decompression and fusion, degenerative disc disease, and degenerative joint disease. (Tr. 555-57). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4. (Tr. 557-58). The ALJ further determined Plaintiff had the residual functional capacity ("RFC")[3] to perform light work[4] except:

> [Plaintiff] can sit, stand or walk in an 8 hour day for up to 6
> hours and list and carry 20 pounds occasionally and 10 pounds

---

[3] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 CFR §§ 404.1567(b), 416.967(b).

> or less more frequently with no frequent bending or twisting at the waist. He can occasionally crouch, crawl, stoop, kneel and climb stairs and ramps but is restricted from climbing any ladders, rope or scaffolds. He is further restricted from work involving unprotected heights or extreme vibration.

(Tr. 558-71).

At the March 14, 2007 hearing, the ALJ utilized the testimony of a VE. The ALJ posed hypothetical questions to the VE that included Plaintiff's symptoms and their resulting limitations. Based on the hypotheticals posed, the VE testified Plaintiff is unable to perform his past relevant work. (Tr. 571). The ALJ then asked the VE whether a person with Plaintiff's RFC could perform any other jobs existing in significant numbers in the national economy. The VE replied that a person with Plaintiff's RFC could perform other jobs existing in significant numbers in the national economy. (Tr. 572-73). Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act. (Tr. 573-74).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.  Issues on Appeal

Plaintiff argues three issues on appeal. First, Plaintiff contends that his back, lower extremity, and pain impairments render him unable to perform any work on a regular and consistent basis. (Doc. 19, pp. 13-16). Second, Plaintiff argues the ALJ erred in providing greater weight to the medical opinions of non examining physicians over those from other treating physicians. (Doc. 19, pp. 16-21). Finally, Plaintiff contends the ALJ erred by failing to re-contact Dr. Harper-Nimock, the Commissioner's consultative examiner. (Doc. 19, pp. 21-25). The Court will address each of these issues.

### 1. Whether Plaintiff's back, lower extremity, and pain impairments render him unable to perform any work on a regular and consistent basis.

Plaintiff argues his back and leg impairments, including pain, render him unable to perform work activity on a regular and consistent basis. (Doc. 19, pp. 13-16). In response, the Commissioner contends the ALJ properly evaluated Plaintiff's pain and substantial evidence supports his RFC finding. (Doc. 20, pp. 6-10).

In this circuit, subjective complaints are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptoms arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Hale, 831 F.2d at 1012.

Here, the ALJ found that although Plaintiff's impairments could reasonably be expected to cause the limitations he alleged, his statements about the intensity, persistence, and limiting effects of those symptoms were not entirely credible in light of

the objective medical findings, degree of medical treatment received or required, discrepancies between Plaintiff's assertions, other documentary evidence, and the reports and findings of treating, examining, and non examining medical sources.  (Tr. 567).  The ALJ discussed that while Plaintiff may experience some pain and discomfort due to his back and lower extremity complaints, since his back surgery in March 2004, Plaintiff has neither been hospitalized nor has he undergone any further surgical procedures.  (Tr. 195, 509, 567, 863).  The ALJ noted that Plaintiff's post-operative condition was treated with medication, which he testified afforded him a fair amount of pain relief.  (Tr. 367, 504, 514, 652).  Dr. Witkind testified, and Dr. Girouard found, that post-operative imaging studies did not reveal any neural compromise or severe spinal stenosis or disc herniation.  (Tr. 567).  An orthepedic surgeon who examined Plaintiff in March 2005 found no motor or sensory deficits, atrophy, or muscle weakness to support Plaintiff's complaints of disabling pain.  (Tr. 165, 176, 294-96, 302, 304, 307, 315, 319, 327, 432, 567, 687, 863, 867, 918, 980, 997, 1048, 1066, 1168, 1170, 1080, 1084, 1089, 1092, 1132, 1152, 1212).

Additionally, Plaintiff rejected courses of treatment and stopped physical therapy. (Tr. 199, 269, 300, 507, 509, 567, 1073, 1092, 1181-82).  Plaintiff continued to smoke, drink, and use illicit drugs.  (Tr. 125, 165, 176, 235, 256, 290, 318, 442, 683, 865, 972, 979, 1039, 1042, 1168).  While Plaintiff testified his medication made him drowsy and tired, he has denied such side-effects and was resistant to the use of other medication and treatment modalities.  (Tr. 567-68, 1134).  Furthermore, Plaintiff's overall activities of daily living - including helping to dress, bath and feed his elderly father, helping with

household chores, and frequent driving- are incompatible with the pain alleged.  (Tr. 569).

Based on the foregoing and its review of the record as a whole, the Court finds the ALJ properly considered Plaintiff's pain impairments when assessing his RFC.  (Tr. 552-74).

> **2.    Whether the ALJ erred in providing greater weight to the medical opinion of a non examining physician over those of two treating physicians.**

Plaintiff argues the ALJ erred in according greater weight to the testimony and opinion of Dr. Witkind, a non-examining physician, over the opinions of Drs. Girouard and Stanescu, his treating physicians.  (Doc. 19, pp. 21-25).  In response, the Commissioner contends the records from medical professionals who examined and treated Plaintiff do not establish that Plaintiff's condition caused disabling limitations and instead provide substantial evidence to support the ALJ's findings.  (Doc. 20, pp. 10-13).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436,1440 (11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  Lewis, 125 F.3d at 1440.  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error.

MacGregor, 786 F.2d at 1053.  Good cause for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record.  Phillips, 357 F.3d at 1240-41 (citing Lewis, 125 F.3d at 1440); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).  Where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true.  MacGregor, 786 F.2d at 1053.

Here, the ALJ found that Drs. Girouard and Stanescu's findings of disability were neither supported nor bolstered by the overall record evidence or their own treatment records.  (Tr. 568).  This Court disagrees.  Drs. Girouard and Stanescu each examined Plaintiff over 15 times.  Dr. Girouard referenced findings to include pain, decreased range of motion, and muscle spasms in support of his first questionnaire (Tr. 220) and pain, decreased range of motion, and diminished sensation in support of his second questionnaire.  (Tr. 96).  Dr. Stanescu, in support of the opinions offered in her questionnaire, referenced pain, along with a MRI which revealed disc bulges and forminal narrowing.  (Tr. 992).

Upon review of the record, it appears the only substantiated reason the ALJ offered for discrediting the opinions of Drs. Girouard and Stanescu were that they were in conflict with the opinions of ME Dr. Witkind.  The ALJ closely considered and accorded great weight to the opinions of ME Dr. Witkind.  (Tr. 569-70).  The opinions of MEs may be entitled to great weight if supported by and consistent with the medical

evidence of record as a whole. 20 C.F.R. §§ 404.1512(b)(6), 404.1527(f)(2)(I), (iii), 416.912(b)(6), 416.927(f)(2)(I), (iii). Here, the Court is not convinced that Dr. Witkind's testimony is consistent with the record as a whole. For example, Dr. Witkind testified that he noted conflicts between the notes of Drs. Girouard and Stanescu and the limitations they indicated on the questionnaires they completed. (Tr. 682-89). In support thereof, he testified that there was only "one straight leg raise test" contained in the file, which was pre-surgery. (Tr. 690). However, the record reveals three post-surgery positive straight leg test results. (Tr. 166, 302, 866). Additionally, Dr. Witkind testified that there had "never been" any abnormal clinical findings and "none of the notes by any physician document any musculoskeletal system or nervous system compromise." (Tr. 685, 690). However, Dr. Witkind also testified that abnormal nuerological findings would include "an inability to ambulate" (Tr. 695) but downplayed such findings by Dr. Stanescu because she "didn't describe it" (Tr. 696). Problems with Plaintiff's gait were noted on numerous occasions by Dr. Stanescu and also by Dr. Harper-Nimock. (Tr. 866). Furthermore, contrary to the testimony offered by Dr. Witkind, the evidence record reveals other findings he found absent, including decreased sensory findings by Dr. Stanescu. (Tr. 300).

Based on the foregoing, the Court finds the ALJ failed to properly evaluate the medical opinions of Drs. Girouard and Stanescu and offered inadequate reasons for discrediting those opinions.

**3. Whether the ALJ erred by failing to re-contact Dr. Harper-Nimock, the Commissioner's consultative examiner.**

Plaintiff argues the ALJ failed to fully and fairly develop the record in not re-contacting consultative examiner, Dr. Harper-Nimock. (Doc. 19, pp. 16-21). The Commissioner responds that the ALJ was not required to re-contact Dr. Harper-Nimock for clarification of his opinions, having properly rejected them as being unsupported by the record evidence. Moreover, the Commissioner argues, the ALJ had ample evidence before him to evaluate Plaintiff's RFC and it was not necessary that he re-contact Dr. Harper-Nimock. (Doc. 20, pp. 14-16).

It is well settled that "a hearing before an ALJ is not an adversarial proceeding" and that, whether or not the claimant is represented by counsel, "the ALJ has a basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). The ALJ is required to develop the claimant's complete medical history for at least the twelve months preceding the month in which the application was filed and to make every reasonable effort to help a claimant get medical reports from the claimant's own medical sources. See 20 C.F.R. §§ 404.1512(d), 416.912(d). Medical sources should be re-contacted when the evidence received from that source is inadequate to determine whether the claimant is disabled. See 20 C.F.R. §§ 404.1512(e), 416.912(e). "In evaluating the necessity for a remand," courts should be "guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (quotations omitted). The likelihood of unfair prejudice may arise if there is an evidentiary gap that "the claimant contends supports [his] allegations of disability." Id. at 936 n.9.

Sections 404.1512(e) and 416.912(e) specifically state that a medical source should be re-contacted if the evidence received by the Commissioner from that source is "*inadequate* [to] determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e) (emphasis added). In this case, Dr. Harper-Nimock's assessments were not inadequate to determine whether Plaintiff was disabled. The fact that the ALJ chose to reject Dr. Harper-Nimock's opinions did not trigger a duty to re-contact him. See White v. Massanari, 271 F.3d 1256, 1261 (10th Cir. 2001) ("It is the inadequacy of the record, rather than the rejection of the treating physician's opinion, that triggers the duty to re-contact that physician."); see also Clapp v. Astrue, 2008 U.S. Dist. LEXIS 16574, 2008 WL 275880, at *14 (N.D. Fla. March 4, 2008). However, because the Court is remanding the case for the ALJ to re-evaluate the opinions of Drs. Girouard and Stanescu, it will direct the ALJ to re-contact Dr. Harper-Nimock as well.

## IV.    CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to: (1) reconsider the medical opinions of Dr. Stanescu and accord them proper weight; (2) reconsider the medical opinions of Dr. Girouard and accord them proper weight; (3) re-contact Dr. Harper-Nimock, the Commissioner's consultative examiner; and (4) conduct any other proceedings deemed appropriate. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **However, this order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this 14th day of September, 2010.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party